UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VEINTE SEIS DOE, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-3573** |

**MEMORANDUM OPINION AND ORDER**

Born in Iran, Plaintiff Veinte Seis Doe moved to the United States in 2010 and was naturalized as a United States citizen in 2018. See ECF No. 1 (Compl.), ¶ 7. His father, Saeed Shahi, was known to Iranian authorities as an opponent of the Islamic Republic and was consistently targeted for his opposition. Id., ¶¶ 3, 38. That pattern of targeting and threats has extended to Plaintiffs. Id., ¶¶ 4–5. Plaintiff Veinte Siete Doe, Veinte Seis Doe's sister, was also born in Iran and is a naturalized citizen of the United States. Id., ¶ 9. Plaintiff Veinte Ocho Doe, their mother, is the former wife of Saeed Shahi — fearing danger from Iranian authorities, she left Iran for the United States in 2003 and became a naturalized citizen in 2009. Id., ¶¶ 11, 39.

According to Plaintiffs, Defendants attacked Veinte Seis Doe and his father during demonstrations in the wake of the 2009 Iranian presidential election, "physically assault[ing]" them both and "deliberately smash[ing]" the "windows of the family company." Id., ¶¶ 41–47. Afterward, Defendants repeatedly detained Saeed Shahi and threatened him and his family. Id., ¶¶ 48–52. Shortly thereafter, Veinte Seis Doe — already a lawful permanent resident of the United States by this time — was interrogated and tortured in Iranian detention. Id., ¶¶ 53, 55–63; see also id., ¶¶ 73–92 (describing separate detention, interrogation, and physical assault). In

the United States, Veinte Seis Doe and Veinte Siete Doe have performed at public gatherings in support of the Iranian people, id., ¶¶ 98, 102, after which they began receiving threats, insults, and accusations directed at them and at members of their family. Id., ¶¶ 98, 102. Veinte Ocho Doe has also participated in peaceful protests and gatherings and has similarly received threatening messages. Id., ¶ 103. During one such protest, Veinte Seis Doe was physically assaulted and called a "traitor." Id., ¶¶ 104–08. After another, someone egged Veinte Seis Doe's car and shouted threats at him, "indicating that they knew who he was, that they were watching people like him, and that he should return home and not attend similar events again." Id., ¶¶ 112–15. Similar instances of targeting happened to Veinte Siete Doe and Veinte Ocho Doe. Id., ¶¶ 116–22.

Plaintiffs thus sued Iran for damages under the Foreign Sovereign Immunities Act. See Compl., ¶¶ 127–52. They now move to proceed pseudonymously. See generally ECF No. 2 (Mot.). The Court will grant their Motion.

## I. Legal Standard

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). That requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "balance the

litigant's legitimate interest in anonymity against countervailing interests in full disclosure" by applying a "flexible and fact driven" balancing test. Id. (quoting In re Sealed Case, 931 F.3d at 96). That test assesses "five non-exhaustive factors":

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or, even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and relatedly;
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (cleaned up).

## II. Analysis

Plaintiffs have shown that their interest in pseudonymity outweighs the public's interest in learning their identities.

First, Plaintiffs do not seek to proceed under pseudonyms "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97). Privacy can include "maintaining [Plaintiffs'] and their family members' safety." Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023); see also R.A. v. Islamic Republic of Iran, No. 23-2606, ECF No. 4 (Mem. Op. & Order) at 3 (D.D.C. Sep. 12, 2023) (determining that history

of "severe violence and threats . . . at the hands of proxy militia organizations" shows that "Plaintiffs seek to avoid much graver harms than mere annoyance and criticism").

Plaintiffs' allegations of violence and threats against them and their relatives — including torture and detention in Iran and threats and attacks in the United States, see Mot. at 3–6 — are more than sufficient to tip this first factor in their favor. In particular, their pleadings demonstrate that they have an interest in "preserving privacy to protect" the family's "safety from third-party proxies" who "might seek to harm Plaintiff[s] on their own accord," not just at the direction of Defendants. Farshid Do v. Islamic Revolutionary Guard Corps, 2026 WL 980758, at *2 (D.D.C. Apr. 13, 2026); see Mot. at 4 (explaining that proxies are "how the campaign against Plaintiffs in the United States has been carried out: by persons acting at the direction of, or with material support from, Iran and the IRGC"). In addition, as Plaintiffs note, the sensitive nature of the information about them, including the "intimate details" of their suffering and psychological stresses incurred, see Mot. at 9, lends their request additional support under this factor.

The second, related factor — the risk of retaliatory harm — likewise weighs in favor of pseudonymity. Plaintiffs allege that the threats and assaults described above were conducted to retaliate against them for participating in gatherings against the regime. See Compl., ¶¶ 124–26. Such "campaign[s] against dissidents abroad," they note, are well documented. See Mot. at 10 (citing Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97, 100–05 (D.D.C. 2000); and Bakhtiar v. Islamic Republic of Iran, 571 F. Supp. 2d 27, 30 (D.D.C. 2008), aff'd, 668 F.3d 773 (D.C. Cir. 2012)). Specific to their case, Plaintiffs allege that "non-defendant prox[ies]" continue to target them and that publicly identifying them in this litigation would supply those proxies with information about "who the target[s] [are] and where to find [them]." Id. at 4. The

risk of retaliation is amplified, Plaintiffs explain, by their "continuing ties to Iran" that require them to "travel repeatedly between the two countries." Id. at 11. When in Iran, Plaintiffs have been barred from leaving and have been assaulted. Id. The threats aimed at them, moreover, extend to members of their family and friends. Id. The "risk of retaliatory . . . harm to" Plaintiffs and "to innocent non-parties" therefore supports letting Plaintiffs proceed pseudonymously. In re Sealed Case, 971 F.3d at 326 (quotation marks omitted).

The third factor, in contrast, supports disclosure. Plaintiffs acknowledge that they are all adults and thus that this factor does not "independently favor[] pseudonymity." Mot. at 11; see In re Sealed Case, 971 F.3d at 326.

The fourth factor, the identity of the defendants, favors pseudonymity when a plaintiff sues a government for individualized relief. Doe v. Rubio, 2025 WL 3522731, at *2 (D.D.C. Dec. 9, 2025). This suit hits the mark. Plaintiffs are suing the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps, see Compl., ¶¶ 16–20 — both governmental entities — as well as officials, employees, agents, proxies, contractors, and intermediaries of said governmental entities (Does 1–50). Id., ¶¶ 21–22. Furthermore, they seek compensatory, economic, and punitive damages, id. at 24–25 (prayer for relief), which are forms of individualized relief.

Fifth and finally, letting Plaintiffs proceed pseudonymously will not prejudice Defendants. Plaintiffs plan to file their true identities under seal for *in camera* inspection and have acknowledged that "the Court retains authority to order further disclosure if circumstances change." Mot. at 12; see also J.K.A. v. United States, 2023 WL 12248425, at *3 (D.D.C. Aug. 10, 2023) (noting that when plaintiff offers to file identifying information under seal, this factor supports pseudonymity). And to the extent that Defendants already know their identities, such

knowledge does not undercut Plaintiffs' request for pseudonymity under this factor. See Mot. at 13; see also Doe v. Fed. Republic of Germany, 680 F. Supp. 3d 1, 6 (D.D.C. 2023) ("Defendants would suffer no risk of unfairness if the Motion were granted, given Plaintiff's claim that they already know Plaintiff's true identity.") (cleaned up). Defendants thus do not face a risk of unfairness. They remain free to request any further information they deem necessary to the full defense of this case or to ask the assigned court to reconsider this decision.

The Court highlights that this is an initial decision to permit Plaintiffs to proceed pseudonymously. If Defendants appear to defend this suit, the balance of factors might tip the other way. See Doe I v. Sabeti, 2025 WL 4348642, at *1 (M.D. Fla. Aug. 12, 2025) (reconsidering initial grant to proceed pseudonymously in Torture Victim Protection Act case upon defendant appearance). In any event, Plaintiffs have made an initial showing that their concerns extend beyond Defendants' learning their identities to the risk that third parties could obtain this information and act on Defendants' behalf to harm them. See Mot. at 13 (citing Farshid Do, 2026 WL 980758, at *2).

In sum, all the factors weigh in favor of granting Plaintiffs' Motion to Proceed Under Pseudonym. The Court will thus grant Plaintiffs' Motion, subject to reconsideration by the District Judge to whom this case is randomly assigned.

The Court accordingly ORDERS that:

1. Plaintiffs' [2] Motion for Leave to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;
2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action; and

3. Within fourteen days of this Order, Plaintiffs shall file:

   i. A pseudonymous version of their [2] Motion on the public docket; and

   ii. A sealed *ex parte* declaration containing their real names and residential addresses.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 15, 2026